UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RUEBEN HERRERRA and RICO MENEFEE,

        Plaintiffs,

    v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

        Defendants.
_____/

CASE NO. 5:10-CV-11215
JUDGE JOHN CORBETT O'MEARA
MAGISTRATE JUDGE PAUL KOMIVES

**REPORT AND RECOMMENDATION ON:**
**(1) PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (docket #53);**
**(2) DEFENDANT MDOC'S MOTION TO DISMISS (docket #112);**
**(3) PLAINTIFFS' MOTION TO CERTIFY CLASS (docket #125);**
**(4) THE MDOC DEFENDANTS' MOTION TO DISMISS (docket #130);**
**(5) THE MEDICAL DEFENDANTS' MOTION TO DISMISS (docket #140); and**
**(6) PLAINTIFF MENEFEE'S MOTION FOR SUMMARY JUDGMENT (docket #157)**

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.    *Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        1.    *Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
        2.    *Plaintiff Menefee's Allegations* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        3.    *Plaintiff Herrerra's Allegations* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    B.    *Plaintiff's Second Motion for Preliminary Injunction* . . . . . . . . . . . . . . . . . . . . . . . . 6
    C.    *Plaintiffs' Motion for Class Certification and Appointment of Counsel* . . . . . . . . . . . . . . . . . . . . . 8
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    D.    *Defendants' Motions to Dismiss* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        1.    *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
        2.    *MDOC* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        3.    *Personal Involvement* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            a. Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        4.    *Property Claim Against Defendant Lesley* . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        5.    *Statute of Limitations–Defendant Piper* . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
            a. Statute of Limitations Generally . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
        6.    *Deliberate Indifference–Defendants Khan, Mass, and Morris* . . . . . . . . . . . . . . . . . . 23
            a. Eighth Amendment Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
            b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
        7.    *Retaliation–Defendant Khan* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
        8.    *ADA/Rehabilitation Act* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
        9.    *Defendant Fundunburks* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

E.     *Plaintiff Menefee's Motion for Summary Judgment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
F.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
III.     <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

       \*      \*      \*      \*      \*

I.     <u>RECOMMENDATION</u>: The Court should: (1) deny plaintiffs' motion for preliminary injunction (docket #53); (2) grant defendant MDOC's motion to dismiss (docket #112); (3) deny plaintiffs' motion for appointment of counsel and class certification (docket #125); (4) grant the MDOC defendants' motion to dismiss (docket #130); (5) grant the Medical defendants' motion to dismiss (docket #140); and (6) deny plaintiff Menefee's motion for summary judgment (docket #157). The Court should also *sua sponte* dismiss plaintiff Menefee's claims against defendants Hammond, Fundunburks, and Morris.

II.     <u>REPORT</u>:

A.     *Background*

      1.     *Procedural Background*

      This is a federal civil rights action brought pursuant to 42 U.S.C. § 1983 by two prisoners proceeding *pro se*. Plaintiffs are Rueben Herrerra and Rico Menefee. Plaintiffs' amended complaint, filed on April 6, 2011, in response to this Court's Order that plaintiffs file a more definite statement, names 14 defendants: the Michigan Department of Corrections (MDOC); former MDOC Director Patricia Caruso; former MDOC grievance manager James Armstrong; MDOC Chief Medical Director Jeffrey Stieve; former MDOC Chief Medical Director George Pramstallar; grievance coordinator Larry McMillan; corrections officials Crystal Lesley, Vallery Hammond, Nancy Lange, and Fundunburks; Dr. Zakiuddin Khan; Dr. Paul Piper; Physician's Assistant Mass; and Physician's

Assistant Morris.[1]  Currently pending before the Court are twenty-six motions filed by the parties. This Report addresses various dispositive motions that are pending, to wit: plaintiffs' second motion for a preliminary injunction, filed on November 29, 2010; plaintiff Menefee's motion for class certification, filed on April 6, 2011; MDOC's motion to dismiss, filed on March 9, 2011; the MDOC defendants' motion to dismiss, filed on April 20, 2011; the Medical defendants' motion to dismiss, filed on May 16, 2011; and plaintiff Menefee's motion for summary judgment, filed on June 24, 2011. The remaining motions are addressed in separate Orders and Reports filed on this date.

    2.    *Plaintiff Menefee's Allegations*

The bulk of plaintiff Menefee's allegations relate to the medical care he has received while incarcerated.  A number of these allegations do not directly allege claims against the defendants named in the complaint, and cover the period from 2001-07.  With respect to his specific claims against each defendant, plaintiff alleges the following:

Defendant Hammond: While incarcerated at JMF from 2003 to 2004, plaintiff experienced several medical problems.  Defendant Hammond refused to process orders by his treating physicians for various tests, and transferred him in retaliation for his complaints.  *See* Amended Compl., ¶¶ 22-25.

Defendant Piper: While incarcerated at the Ryan Correctional Facility in 2004, defendant Piper failed to treat his foot problems, including heel and toe spurs and arthritis, and terminated his therapeutic diabetes diet.  *See id.*, ¶¶ 24-31.

Defendants Morris & Lange: While incarcerated at the Lakeland Correctional Facility from

---

[1]Defendants Caruso, Armstrong, Stieve, Pramstallar, McMillan, Lesley, Hammond, and Lange are referred to as the "MDOC defendants."  Defendants Khan, Piper, Morris, and Mass are referred to as the "Medical defendants."

2006-07, plaintiff Menefee spoke to Morris regarding his medical problems.  Morris stated that plaintiff's concerns were all in his mind, and reduced his blood checks from once daily to once per week.  *See id.*, ¶¶ 34-36.  Plaintiff Menefee spoke to defendant Lange regarding these matters, but she failed to correct his problem with Morris and "passed the buck" to the quartermaster to provide him with medical tennis shoes.  *See id.*, ¶¶ 39-43.

Defendant Khan: While incarcerated at the Thumb Correctional Facility from 2007-08, plaintiff Menefee discussed his medical problems with Dr. Khan.  Plaintiff alleges that Khan threatened to have him transferred and told him that he would not order any treatment for plaintiff. *See id.*, ¶¶ 47-50.

Defendant Mass: While incarcerated at the Thumb Correctional Facility in 2009, plaintiff Menefee spoke with P.A. Mass regarding his medical problems.  Mass told him that she would not order any treatment, but would have him seen by mental health services and would prescribe sleeping medication to address his concerns.  *See id.*, ¶¶ 54-56.

Defendant Lesley: While incarcerated at the Cotton Correctional Facility in 2008, defendant Lesley called plaintiff into the property room, at which time a disagreement arose regarding damage to plaintiff's foot locker.  Lesley removed a number of items because, she told plaintiff, none of the property numbers looked like they had been done by property staff.  Lesley subsequently had all of the confiscated property destroyed.  *See id.*, ¶¶ 61-71.

Defendant Fundunburks: Plaintiff alleges that he attempted to resolve the property matter with Counselor O'Dell.  While standing in line waiting to see O'Dell, defendant Fundunburks walked in and demanded that plaintiff go to the back of the line.  About five minutes later, O'Dell motioned for plaintiff to come into his office, but Fundunburks stopped him from doing so.  At this point, Fundunburks pushed plaintiff in the chest away from the counselor's office.  *See id.*, ¶¶ 74-77.

4

<u>Defendant McMillan:</u> Plaintiff alleges that defendant McMillan destroyed or failed to process all of the grievances he filed regarding the matters at the Cotton Correctional Facility. *See id.*, ¶¶ 60, 79-82.

<u>Defendant Caruso:</u> According to plaintiff, defendant Caruso approved the policies which lead to his removal from a therapeutic diabetic diet and approved the denial of thousands of grievances addressing multiple constitutional violations. *See id.*, ¶¶ 84-86.

<u>Defendant Armstrong</u>: Plaintiff Menefee alleges that defendant Armstrong subjected him to cruel and unusual punishment by denying his Step III grievances. *See id.*, ¶¶ 90-91.

<u>Defendants Stieve and Pramstallar:</u> Plaintiff alleges that defendants Stieve and Pramstallar are responsible for all health care treatment administered to prisoners, created medical policies based solely on cost of treatment, and failed to correct the medical treatment problems he brought to their attention. *See id.*, ¶¶ 93-100.

3.    *Plaintiff Herrerra's Allegations*

Plaintiff Herrerra's allegations are more confined, and relate solely to defendant Khan. The amended complaint alleges that plaintiff Herrerra spoke with Dr. Khan regarding his medical problems, including diabetes, knee pain, and heel spurs, but that Dr. Khan refused to treat his conditions. A specialist later determined that plaintiff needed knee surgery, but Dr. Khan disagreed, and also disagreed that plaintiff needed a therapeutic diet or treatment for blood pressure and high cholesterol. *See* Amended Compl., ¶¶ 104-07.[2]

---

[2]The amended complaint is signed only by plaintiff Menefee. On March 17, 2011, after I recommended that the Court require plaintiff's to file an amended complaint but before the amended complaint was filed by plaintiff Menefee, plaintiff Herrerra filed a motion to amend the complaint. By Order entered on this date, I have denied the motion as moot in light of the filing of the amended complaint. The motion does not include any allegations not included in the amended complaint filed by plaintiff Menefee, apart from failure to treat his leg injury from 2002 through 2007. As explained

B.      *Plaintiff's Second Motion for Preliminary Injunction*

On November 29, 2010, plaintiffs filed a second motion for preliminary injunction. Plaintiffs' motion relates solely to plaintiff Menefee, complaining of the conditions at Newberry Correctional Facility, where he is now incarcerated, and asserting that plaintiff Menefee was threatened with a retaliatory transfer to another prison. The Court should conclude that plaintiffs are not entitled to a preliminary injunction.

Plaintiffs' motion for preliminary injunction raises claims that are wholly separate from the claims raised in the complaint. The motion attacks the conditions at Newberry Correctional Facility, including inadequate restroom facilities, sitting areas, and living space; excessive dust; unclean mattresses; and an absence of ladders for the top bunks. These claims are unrelated to any of the medical and property claims alleged in the complaint arising from plaintiffs' incarceration in other facilities. Further, the amended complaint names no officials employed at Newberry Correctional Facility, and plaintiffs' motion alleges independent constitutional violations; it does not allege that officials at Newberry are acting in concert with the existing defendants.

To the extent plaintiffs seek an injunction based on these facts against the defendants named in the complaint, their request is moot. It is well established that "[a] prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility." *Thompson v. Carter*, 284 F.3d 411, 415 (2d Cir. 2002); *see also*, *Incumaa v. Ozmint*, 507 F.3d 281, 286-87 (4th Cir. 2007) (citing cases from Second, Third, and Eighth Circuits); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Because plaintiff Menefee is no longer subject to the care of the officials he claims were denying him rights, and does not seek injunctive relief against

below, any allegations covering this time period are barred by the statute of limitations.

these defendants, his request for preliminary injunctive relief is moot.  *See Candelaria v. Coughlin*, 787 F. Supp. 368, 378 (S.D.N.Y.), *aff'd*, 979 F.2d 845 (2d Cir. 1992).

To the extent that plaintiffs seek an injunction binding officials at the Newberry Correctional Facility who are not parties to this action, the Court lacks jurisdiction to enter such an injunction.  "It is elementary that one is not bound by a judgment in *personam* resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 110 (1969) (citation omitted).  A court is powerless to adjudicate a personal claim against a party unless it has jurisdiction over the party, and even a party who is alleged to be in concert or participation is to be accorded a hearing for a determination of his role in the matter before a determination is made that the party is subject to the injunction.  *See id.* at 112; *Ron Matusalem & Matusa, Inc. v. Ron Matusalem, Inc.,* 872 F.2d 1547, 1554 (11th Cir.1989).  Thus, the Court cannot subject the officials at Newberry Correctional Facility to an injunction, as they have not been named as defendants and served in accordance with Rule 4 of the Federal Rules of Civil Procedure.  *See Guillen v. Thompson,* No. 08-1279, 2009 WL 2513501, at *7 (D.Ariz. Aug.14, 2009); FED. R. CIV. P. 65(d)(2) (injunction is binding only on parties, their agents, and persons acting in concert with parties).

Further, as noted above plaintiffs' motion for preliminary injunction is wholly unrelated to any of the claims raised in the amended complaint.  As the Supreme Court has explained, a preliminary injunction is appropriate to grant relief of "the same character as that which may be granted finally," but is inappropriate where the injunction "deals with a matter lying wholly outside of the issues in the suit." *De Beers Consol. Mines Ltd. v. United States*, 325 U.S. 212, 220 (1945); *see also*, *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997) ("A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside

7

the issues in the suit."); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (a party moving for a preliminary injunction must establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint). Because the bases on which plaintiffs seek a preliminary injunction are unrelated to the claims raised in the amended complaint, plaintiffs have failed to demonstrate a likelihood of success on the merits. *See Guillen v. Thompson*, No. 08-1279, 2009 WL 2513501, at *6-*7 (D. Ariz. Aug. 14, 2009); *Baum v. Immel*, No. 2:05-CV-89, 2006 WL 666627, at *3 (W.D. Mich. Mar. 14, 2006). Accordingly, the Court should deny plaintiffs' motion for preliminary injunction.

Similarly, plaintiffs have failed to demonstrate irreparable harm in the absence of an injunction. Although plaintiffs complain that there are insufficient restroom and sitting facilities, excessive dust, and inadequate beds, they do not explain how these alleged constitutional violations could not be remedied through an award of money damages.

C.    *Plaintiffs' Motion for Class Certification and Appointment of Counsel*

On April 6, 2011, plaintiff Menefee filed a single page motion for appointment of counsel, and a single page motion for class certification pursuant to Rule 23(b)(2) which seeks certification of a class action and appointment of class counsel. The two motions were docketed as a single request for relief. The Court should deny plaintiffs' motion.

1.    *Legal Standard*

The standards governing certification and maintenance of class actions are set forth in Rule 23 of the Federal Rules of Civil Procedure. In relevant part, Rule 23 provides:

> (a) **Prerequisites to a Class Action**. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and

adequately protect the interests of the class.

      (b) **Class Actions Maintainable**. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

          (1) the prosecution of separate actions by or against individual members of the class would create a risk of

            (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

            (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

          (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

          (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23. As the language of the rule makes clear, a class action may not be certified unless the named plaintiffs satisfy all four of the prerequisites set forth in subdivision (a), as well as at least one of the conditions set forth in subdivision (b). *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). The named plaintiffs bear the burden of establishing these prerequisites. *See id.* Because a class action binds parties not involved, and perhaps not aware, of the class action, certification of a class implicates interests protected by the Due Process Clause. For this reason, a court must conduct a "rigorous analysis" of the Rule 23 factors before certifying a class action. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).

      2.    *Analysis*

Here, the Court need not consider each of the factors set forth in Rule 23, because the named

plaintiffs cannot satisfy the fourth prerequisite set forth in subdivision (a), *i.e.*, that they will fairly and adequately represent the interests of the class members. As the Sixth Circuit has explained, to establish adequacy of representation under Rule 23(a)(4), both common interests must exist between the named plaintiffs and the purported class members, and "it must appear that the representative will vigorously prosecute the interests of the class *through qualified counsel*." *American Med. Sys.*, 75 F.3d at 1083 (internal quotation omitted). Thus, a court considering class certification must take into account "the experience and ability of counsel for the plaintiffs." *Cross v. National Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977); *cf. General Tel.*, 457 U.S. at 157 n.13.

Here, plaintiffs are proceeding *pro se* and are not represented by counsel. It is well established that "[a] litigant may bring his own claims to federal court without counsel, but not the claims of others. This is because the competence of a layman is clearly too limited to allow him to risk the rights of others." *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) (internal quotation omitted). For this reason, "non-attorneys proceeding *pro se* cannot adequately represent a class." *Ziegler v. Michigan*, 90 Fed. Appx. 808, 810 (6th Cir. 2004); *accord Palasty v. Hawk*, 15 Fed. Appx. 197, 200 (6th Cir. 2001); *Fymbo*, 213 F.3d at 1321; *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975); *Sillah v. Davis*, 252 F. Supp. 2d 589, 597 (W.D. Tenn. 2003). Thus, the named *pro se* plaintiffs fail to satisfy the adequacy of representation requirement of Rule 23(a)(4), and they may not maintain a class action on behalf of other prisoners.[3]

Attempting to avoid this result, plaintiffs ask that the Court appoint counsel to represent the putative class. The Court has no authority to do so, however. A civil litigant has no constitutional

---

[3]Plaintiffs' request for appointment of counsel is addressed in a separate Opinion issued on this date. As explained in that order, Rule 23 does not itself provide a basis for appointing counsel to an indigent plaintiff.

or statutory right to the appointment of counsel. *See Abdur-Rahmam v. Michigan Dep't of Corrections*, 65 F.3d 489, 492 (6th Cir. 1995). Pursuant to the *in forma pauperis* statute, the court "may *request* an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1) (emphasis added). A court's authority under this provision, however, is limited to assisting a civil litigant in obtaining pro bono counsel; a court has no authority to compel or otherwise appoint counsel to represent any civil party. *See Mallard v. United States Dist. Ct. for the S. Dist. of Iowa*, 490 U.S. 296, 301-02, 310 (1989). A court should not request counsel for an indigent litigant as a matter of course, but should reserve such requests for cases involving "exceptional circumstances." In making this determination, a court should consider the probable merit of the claims, the nature of the case, the complexity of the legal and factual issues raised, and the ability of the litigant to represent himself. *See Lince v. Youngert*, 136 Fed. Appx. 779, 782 (6th Cir. 2005); *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993). Here, plaintiffs amended complaint presents straightforward legal claims. Thus, assistance in securing *pro bono* counsel is not appropriate. Further, even if such assistance were appropriate, at this point plaintiffs do not have counsel and it cannot be determined with any degree of certainty whether the Court would be able to secure *pro bono* counsel to represent plaintiffs. Thus at this time plaintiffs fail to satisfy Rule 23, even if they may be able to do so in the future.

Further, Rule 23 does not provide any basis for the appointment of counsel in this purported class action. To be sure, Rule 23 requires the appointment of a class counsel, and provides the procedures for such an appointment once a class has been certified. *See* FED. R. CIV. P. 23(b)(1)(B), (g). These provisions, however, do not authorize the appointment of an attorney to represent an indigent plaintiff seeking to certify a class. Rather, they merely provide for the appointment of a single attorney (or group of attorneys) to function as class counsel, drawn from the pool of attorneys already involved in the litigation. *See, e.g.*, FED. R. CIV. P. 23(g)(2) (speaking of "applicant[s] for

11

appointment as class counsel"); *id.*, Advisory Committee Notes, 2003 Amendments ("[I]n a plaintiff class action the court usually would appoint as class counsel only an attorney or attorneys who have sought appointment."). Thus, this Court has no authority to "appoint" counsel to represent plaintiff so that he may pursue his claims as a class action. Accordingly, the Court should deny plaintiffs' motion for class certification.

D.      *Defendants' Motions to Dismiss*

        Also pending before the Court are three motions to dismiss filed by the defendants. First, on March 9, 2011, defendant MDOC filed a motion to dismiss, arguing that plaintiff's claims against it are barred by the Eleventh Amendment. Second, on April 20, 2011, the MDOC defendants filed a motion to dismiss, incorporating by reference their previously filed motions to dismiss (docket #24, 32, and 44). In these motions, defendants sought dismissal on numerous grounds. Specifically, the MDOC defendants contend that: (1) plaintiffs' claims against defendants McMillan and Armstrong fail because they were not personally involved in the alleged constitutional violations and their denial of grievances does not implicate a federal constitutional right; (2) plaintiff Menefee's claim against defendant Lesley for deprivation of his property fails as a matter of law because plaintiff has adequate post-deprivation remedies; (3) plaintiffs' claims against defendant Lange fail to allege a constitutional violation; and (4) plaintiff's claims against defendants Caruso, Stieve, and Pramstallar fail to allege their personal involvement in the alleged constitutional deprivations. The MDOC defendants also contend that, to the extent defendants are asserting claims under the Americans with Disabilities Act (ADA) or § 504 of the Rehabilitation Act, the individual defendants are not proper defendants and the complaint fails to state a claim as a matter of law. Third, on May 16, 2011, the medical defendants filed a motion to dismiss, arguing that: (1) plaintiffs' claims against defendant Piper are barred by the statute of limitations; (2) plaintiffs failed to properly exhaust their claims against defendants Khan

12

and Mass; (3) the amended complaint fails to state a claim for deliberate indifference against defendants Khan and Mass; and (4) the amended complaint fails to state a retaliation claim against defendant Khan.  For the reasons that follow, the Court should grant defendants' motions.

    1.    *Legal Standard*

In order for a court to dismiss a complaint for failure to state a claim, it must appear beyond doubt that the party asserting the claim can prove no set of facts supporting his claim that would entitle him to relief.  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The party asserting the claim is not required to specifically set out the facts upon which he or she bases his claim.  *Id*. at 47.  Rather, "a short and plain statement of the claim" pursuant to FED. R. CIV. P. 8(a)(2) gives the opposing party fair notice of the claim and the grounds upon which it rests. *See Conley*, 355 U.S. at 47.  However, as the Supreme Court has recently explained, bare legal conclusions need not be accepted by the Court, and a pleading must contain sufficient factual allegations to show that the allegations are plausible:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic Corp. v.*] *Twombly* , 550 U.S. 544 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*., at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*., at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*., at 557 (brackets omitted).
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that

13

a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (parallel citations omitted).

A court can only decide a Rule 12(b)(6) motion on the basis of the pleadings; if the court considers matters outside the pleadings, the court must convert the motion into one for summary judgment under Rule 56. *See Kostrzewa v. City of Troy*, 247 F.3d 633, 643-44 (6th Cir. 2001); *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997); FED. R. CIV. P. 12(d).

2.    *MDOC*

The MDOC argues that it is entitled to dismissal because plaintiffs claims against it are barred by the Eleventh Amendment.  The Court should agree.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States  by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  Although the amendment expressly prohibits only suits against states by

14

citizens of other states, the Supreme Court has long held that the Eleventh Amendment also bars suits by citizens of the state being sued. *See Hans v. Louisiana*, 134 U.S. 1 (1890); *Welch v. Texas Dep't of Highways and Public Transp.*, 483 U.S. 468, 472-73 (1987) (plurality opinion). This immunity is based on a two part presupposition: (1) each state is a sovereign entity; and (2) "it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." THE FEDERALIST No. 81, at 487 (Alexander Hamilton) (Clinton Rossiter ed. 1961); *see Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Hans*, 134 U.S. at 13. Thus, "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also, Papasan v. Allain*, 478 U.S. 265, 276 (1986).

"Because the MDOC is a state agency and the State of Michigan has not consented to civil rights suits in the federal courts, the MDOC is entitled to Eleventh Amendment immunity." *Sims v. Michigan Dep't of Corrections*, 23 Fed. Appx. 214, 215 (6th Cir. 2001). The MDOC is immune from plaintiff's claims both for monetary damages and injunctive relief. *See Seminole Tribe*, 517 U.S. at 58 (citing *Cory v. White*, 457 U.S. 85, 90 (1982)) ("[T]he relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment."). Accordingly, the Court should grant defendant MDOC's motion to dismiss.

3.    *Personal Involvement*

The MDOC defendants argue that they are entitled to dismissal of plaintiff's claims against each of the MDOC defendants, with the exception of defendants Lesley, Hammond, and Fundunburks, on the basis that the amended complaint fails to allege that they were personally involved in any alleged deprivation of plaintiffs' constitutional rights. The Court should agree, and should grant the

15

motion to dismiss with respect to these defendants.

### a. Legal Standard

To state a viable § 1983 claim, a plaintiff must allege that: (1) he was deprived of a right, privilege or immunity secured by the Federal Constitution or the laws of the United States; and (2) the deprivation was caused by a person while acting under color of state law. *Doe v. Wigginton*, 21 F.3d 733, 738 (6th Cir. 1994). It is well established that liability in a § 1983 action cannot be based on a theory of *respondeat superior. See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). "To recover damages under 42 U.S.C. § 1983, a plaintiff must establish a defendant's personal responsibility for the claimed deprivation of a constitutional right." *Diebitz v. Arreola*, 834 F. Supp. 298, 304 (E.D. Wis. 1993). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own conduct, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. In other words, in order to state a claim under § 1983 "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (per curiam); *see also*, *Carr v. Parker*, No. 98-6395, 1999 WL 1206879, at *1 (6th Cir. Dec. 9, 1999); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). As the Sixth Circuit has stated:

> "Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate*."

*Taylor v. Michigan Dep't of Corrections*, 69 F.3d 73, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*,

729 F.2d 416, 421 (6th Cir. 1984) (emphasis added)) (emphasis by *Taylor* court); *see also, Monell*, 436 U.S. at 693-95; *Birell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982); *Sims v. Adams*, 537 F.2d 829, 831 (5th Cir. 1976). Furthermore, an allegation that a supervisor was aware of an actionable wrong committed by a subordinate and failed to take corrective action "is insufficient to impose liability on supervisory personnel under § 1983." *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). As the *Haydon* court stated: "A supervisory official's failure to control, or train the offending individual is not actionable, unless the supervisor 'either encouraged the specific incident or in some other way directly participated in it.'" *Haydon*, 853 F.2d at 429 (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir. 1982)).

### *b. Analysis*

Plaintiffs' allegations against defendants Caruso, Stieve, and Pramstallar fail to allege that these defendants had any personal involvement in the alleged deprivations of their rights. With respect to defendant Caruso, the amended complaint alleges only that she was responsible for the implementation of policies regarding medical care at the prisons. *See* Amended Compl., ¶ 86. With respect to defendants Stieve and Pramstallar, plaintiffs allege only that, as medical directors, they created general policies regarding medical care and failed to respond to plaintiff Menefee's complaints regarding the adequacies of his care. *See id.*, ¶¶ 93-95, 99-100. These allegations are insufficient to allege personal involvement by these defendants. Although plaintiffs attempt to tie their claims to broad prison policies, their claims are directed to specific inadequacies in their treatment caused by, in their view, the medical defendants' failure to properly treat their conditions. In light of these allegations, plaintiffs' general allegations that defendants Caruso, Stieve, and Pramstallar were responsible for setting medical policy are insufficient to allege their personal

17

involvement. *See Pravda v. City of Albany, N.Y.*, 956 F. Supp. 174, 182 (N.D.N.Y. 1997); *cf. Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (a "general responsibility for supervising the operation of a prison is insufficient to establish the personal involvement required to support liability."). Further, defendants' alleged failure to respond to plaintiff's complaints and letters is insufficient to show that they personally encouraged or participated in the alleged constitutional violations. *See Proctor v. Appelgate*, 661 F. Supp. 2d 743, 765-66 (E.D. Mich. 2009) (Borman, J., adopting report of Hluchaniuk, M.J.); *Elliott v. Dorian*, No. 05-1667, 2007 WL 120031, at *4 (W.D. Pa. Jan. 10, 2007); *Joyner v. Greiner*, 195 F. Supp. 2d 500, 506-07 (S.D.N.Y. 2002).

Similarly, plaintiffs' allegations against defendants Armstrong and McMillan fail to allege personal involvement. Their allegations against these two defendants are limited to the defendants' handling of their grievances. Nothing in the Constitution requires a state to establish a prison grievance system, nor to investigate or respond to grievances submitted pursuant to prison policy. *See Carlton v. Jondreau*, 76 Fed. Appx. 642, 644 (6th Cir. 2003); *Miller v. Bock*, 55 Fed. Appx. 310, 311-12 (6th Cir. 2003); *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Likewise, plaintiff had no constitutional right to have prison officials conduct an investigation of his allegations at his request. *See Carrasquillo v. City of New York*, 324 F. Supp. 2d 428, 438 (S.D.N.Y. 2004). Thus the denial of, or failure to consider, a grievance does not state a constitutional claim under § 1983 or render the reviewing official personally involved in the deprivation alleged in the grievance. *See Lee v. Michigan Parole Bd.*, 104 Fed. Appx. 490, 493 (6th Cir. 2004); *Martin v. Harvey*, No. 00-1439, 2001 WL 669983, at *2 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (as against defendants whose only involvement was the denial of administrative remedies and the "failure to remedy the alleged retaliatory behavior[,]" "[t]here is no allegation that any of these defendants

directly participated . . . in the claimed . . . acts[].”); *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989) (“The mere fact that these defendants found plaintiff Martin's grievance concerning the seizure to be without merit is insufficient to state a claim against them.”).  Accordingly, plaintiffs’ allegations fail to state a claim for relief against defendants Armstrong and McMillan.

Finally, plaintiffs’ amended complaint fails to allege the personal involvement of defendants Lange and Hammond.[4]  With respect to Lange, plaintiff Menefee alleges that she failed to correct defendant Morris’s refusal to provide treatment, and that she failed to provide therapeutic tennis shoes, instead requiring him to obtain the shoes from the quartermaster.  As noted above, however, defendant Lange’s alleged failure to respond to plaintiff Menefee’s complaints does not establish personal involvement, and plaintiff does not allege that defendant Lange had any power to actually give him the tennis shoes.  Rather, as plaintiffs’ complaint itself implies, that was a responsibility of the quartermaster, and plaintiff Menefee himself alleges that defendant Lange contacted the quartermaster and told him to provide plaintiff with medical tennis shoes.  *See* Amended Compl., ¶ 40.  Similarly, with respect to defendant Hammond plaintiff alleges only that she failed to respond

---

[4]Defendant Hammond has not moved to dismiss, apparently because she has yet to be served with the amended complaint.  However, the Court may *sua sponte* dismiss her for two reasons.  First, the Prison Litigation Reform Act (PLRA) provides that a court may *sua sponte* “dismiss any action brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief.” 42 U.S.C. § 1997e(c)(1). Second, “[a] court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related.” *Bonny v. Society of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993); *see also*, *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 743 (9th Cir. 2008).  A court dismissing a plaintiff's claims against moving defendants may *sua sponte* dismiss non-moving defendants as well where “it is clear that the same ruling would inevitably apply to each of the defendants.” *Rose v. Arkansas Valley Envtl. & Utility Auth.*, 562 F. Supp. 1180, 1189 n.11 (W.D. Mo. 1983).  Here, the same analysis applies to plaintiffs’ claims against defendant Hammond as applies to their claims against defendant Lange.

to his complaints regarding his medical care.  Accordingly, defendant Lange is likewise entitled to dismissal based on plaintiffs' failure to allege her personal involvement.

4.      *Property Claim Against Defendant Lesley*

The MDOC defendants next contend that plaintiff Menefee's claim that defendant Lesley confiscated and destroyed his property fails to state a claim upon which relief may be granted.  The Court should agree.

The Fourteenth Amendment does not protect against all of the State's deprivations of life, liberty, or property.  *See Parratt v. Taylor*, 451 U.S. 527, 537 (1981).  It protects against only those deprivations of life, liberty, or property that are "without due process of law."  *Id.*  Accordingly, the Supreme Court has recognized that the negligent deprivation of an inmate's property does not violate due process if the state provides an adequate remedy to redress the wrong.  *See id.* at 537, *overruled in part by Daniels v. Williams*, 474 U.S. 327, 328 (1986) (negligence does not amount to a "deprivation" at all, thus the Due Process Clause is not implicated).  Likewise, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  In asserting a violation of procedural due process, a plaintiff must plead and prove that available state procedures for redressing the wrong are not adequate.  *See Vicory v. Walton*, 721 F.2d 1062, 1065-66 (6th Cir. 1983); *see also, Wilson v. Beebe*, 770 F.2d 578, 584 (6th Cir. 1985) (en banc).

Here, plaintiffs have made no allegation that Michigan does not have an adequate post-deprivation remedy to address plaintiff Menefee's alleged property loss.  Michigan's grievance system provides state prisoners with an adequate procedure to challenge actions taken by prison officials.  An inmate may file a written grievance; if its resolution is unsatisfactory to plaintiff, he may then seek

sequential evaluation of its disposition by supervisory staff, the warden, the MDOC deputy director, the department director, and the ombudsman. Furthermore, if these five levels prove insufficient, Michigan law allows for judicial review of administrative decision in the state courts. *See De Walt v. Warden, Marquette Prison*, 315 N.W.2d 584, 585 (Mich. Ct. App. 1982); MICH. COMP. LAWS §§ 791.251 *et seq*. Finally, a state tort remedy is available. These remedies have been held to be adequate under federal due process standards. *See Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995); *Branham v. Spurgis*, 720 F. Supp. 605, 608 (W.D. Mich. 1989). In short, plaintiffs have "not shown that no adequate postdeprivation state remedy was available," and therefore they have not alleged a violation of their procedural due process rights so as to enable them to state a § 1983 claim. *See Barnier v. Szentmiklosi*, 810 F.2d 594, 600 (6th Cir. 1987). Accordingly, the Court should grant defendants' motion to dismiss with respect to this claim.

> 5.      *Statute of Limitations–Defendant Piper*

The Medical defendants contend that defendant Piper is entitled to summary judgment because the claims against him are barred by the statute of limitations. The Court should agree, and should grant the medical defendants' motion to dismiss with respect to this claim.

> *a. Statute of Limitations Generally*

For purposes of claims brought under 42 U.S.C. § 1983, state statutes of limitations apply to determine the timeliness of such claims. *See Wilson v. Garcia*, 471 U.S. 268-69 (1985). The same is true of state provisions tolling statutes of limitations. *See Hardin v. Straub*, 490 U.S. 536, 539 (1989). As the Supreme Court has directed, the federal courts should apply the single most analogous state personal injury statute of limitations to § 1983 claims. *See Wilson*, 471 U.S. at 276. The Supreme Court has rejected a claim-by-claim approach to limitations periods under § 1983. Rather, the Court has interpreted the borrowing principle enacted by Congress "as a directive to

21

select, in each State, the one most appropriate statute of limitations for all § 1983 claims." *Wilson*, 471 U.S. at 275.  And, the Court continued, the most analogous limitations period for § 1983 claims is the state limitations period governing personal injury actions.  *See id.* at 278-80.  "Thus, federal courts must apply the state statute of limitations for personal injury claims in *all* § 1983 cases." *Southerland v. Hardaway Mgmt. Co., Inc.*, 41 F.3d 250, 253 (6th Cir. 1994) (emphasis added).  In Michigan, that period is three years.  *See* MICH. COMP. LAWS § 600.5805(10).  *See generally*, *Hardin*, 490 U.S. at 540 ("It is undisputed that the limitations period applicable to this case is three years, as established in Michigan's statute governing personal injury actions.").  Although statutes of limitations and tolling principles are governed by state law, the question of when civil rights claims accrue remains one of federal law.  *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1107 (6th Cir. 1995); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).  Generally, a civil rights cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that is the basis of his action.  *Friedman v. Estate of Presser*, 929 F.2d 1151, 1159 (6th Cir. 1991); *Sevier*, 742 F.2d at 273.  "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Sevier*, 742 F.2d at 273.

*b. Analysis*

Plaintiffs' claim against defendant Piper accrued in 2004, and the statute of limitations therefore expired with respect to this claim in 2007, well before plaintiffs filed their initial complaint in this action.  Plaintiffs' only allegation with respect to defendant Piper is their claim that "[w]hile at Ryan Facility in 2004 the plaintiff Menefee spoke with Dr. Piper on several occasions concerning all of his previous stated medical problems; Dr. Piper stated he would not order any follow up medical treatment because I was fine . . . ."  Amended Compl., ¶ 27.  With respect to this alleged

22

constitutional violation, plaintiff Menefee's injury was apparent at the time the alleged omission occurred. That is, plaintiff Menefee knew or should have known of his injuries at the time Dr. Piper allegedly refused to provide medical treatment. *See Wallace v. Engler*, No. 95-CV-40273-FL, 1997 WL 111777, at *5 (E.D. Mich. Jan. 28, 1997) (Newblatt, J., adopting Report & Recommendation of Komives, M.J.) (citing cases discussing accrual of Eighth Amendment assault and medical care claims, including *Kost v. Kozakiewicz*, 1 F.3d 176, 188 (3d Cir. 1993) and *Brownlow v. Chavez*, 871 F. Supp. 1061, 1064 (S.D. Ind. 1994)). Thus, plaintiffs claim against defendant Piper is barred by the statute of limitations, and the Court should grant the medical defendants' motion to dismiss on this basis.

6.      *Deliberate Indifference–Defendants Khan, Mass, and Morris*

Defendants Khan and Mass contend that they are entitled to dismissal of plaintiffs' medical claims against them because plaintiffs have failed to exhaust their administrative remedies and because the claims fail to state a claim upon which relief may be granted. The Court should conclude that plaintiffs have failed to state a claim against these defendants, and thus should grant their motion to dismiss on this basis.[5]

a.      *Eighth Amendment Standard*

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary

---

[5]Because plaintiffs' complaint fails to state a claim, the Court need not resolve the exhaustion issue. *See* 42 U.S.C. § 1997e(c)(2) ("In the event that a claim is, on its face, frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.").

sense.  In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *see Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion).  *See generally, Parrish v. Johnson*, 800 F.2d 600, 609 (6th Cir. 1986).

The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within the Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  Such claims must satisfy both an objective and a subjective test.  *See Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991).  Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994).  The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *See Brooks*, 39 F.3d at 127-28.

The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to

warrant Eighth Amendment protection.  *See McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981).  To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 349.  The objective component is contextually driven and is responsive to "'contemporary standards of decency.'"  *McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103).  The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton."  *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993).  In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard.  *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06. Under this "deliberate indifference" standard, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer*, 511 U.S. at 847.  A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate.  *See id.* at 843-44.  However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances.  *See id.* at 844-45.  In short, "'[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice."  *Wright v. Taylor*, 79 Fed. Appx. 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

Plaintiffs' claims that defendants denied medically necessary treatment are governed by these objective and subjective tests, as explained by the Supreme Court in *Estelle*, *supra*.  In *Estelle*, the Court held that "[r]egardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983."  *Estelle*, 429 U.S. at 105.  Thus, a court faced with

failure to treat claims has a two-fold inquiry: (1) does the plaintiff's complaint involve "serious illness or injury"?–*i.e*, the objective prong of the Eighth Amendment analysis; and (2) if so, were the defendants deliberately indifferent to this serious illness or injury?–*i.e.*, the subjective prong of the Eighth Amendment analysis. *See generally*, *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996). Importantly, however, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

### b.  Analysis

For the most part, plaintiffs' allegations against defendants Khan and Mass raise only vague claims of failures to treat general medical problems.  With respect to Khan, plaintiff Menefee alleges that he spoke with defendant Khan "regarding all of his medical problems," ranging from "tennishoes [sic]; ankle braces, feet; ankle; knee; stomach; abdominal; eye problems; special diets; snacks; therapeutic vitamins; . . . lotion; painful growth in rectal area; discoloration of the private area; heart problems; pain in legs; heel and toe spurs; swelling of the stomach; diarrhea; mingled with blood; accuchecks; dental treatment; just to name a few . . . ."  Amended Compl., ¶¶ 47-48.  Similarly, plaintiff Herrerra alleges that he spoke with Dr. Khan regarding "therapeutic diets, accuchecks; diet snacks; painful heel spurs; knee problems etc. . . ."  *Id*., at ¶ 104.  Likewise, with respect to defendant Mass plaintiff alleges that he "spoke with PA Mass regarding all of his medical concerns."  *Id*., at ¶ 54.  These generalized allegations are insufficient to state a claim that plaintiffs suffered a serious medical need.

A serious medical condition is a "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).  To allege a

serious medical need, a plaintiff must "allege[] *facts* to show that his medical need is sufficiently 'serious' such that the 'failure to treat [the] condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Smedley v. Reid*, No. 08cv1602, 2010 WL 391831, at *10 (S.D. Cal. Jan. 27, 2010) (emphasis added) (quoting *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002)).  And as *Twombly* and *Iqbal* make clear, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570).  Here, plaintiffs allegations, listing myriad general medical conditions, fail to set forth "sufficient factual matter" to allege that any of their conditions constituted "serious medical needs." *See Haggerty v. Kimiec*, No. 2:11 CV 134, 2011 WL 2600832, at *2 (N.D. Ind. June 29, 2011) (plaintiff failed to sufficiently allege serious medical need where he did not allege "how or when his eye was injured or what treatment he needed."); *Loadholt v. Lape*, No. 9:09-CV-0658, 2011 WL 1135934, at *5 (Mar. 3, 2011), *magistrate judge's report adopted*, 2011 WL 1114253 (N.D.N.Y. Mar. 25, 2011) ("Plaintiff does not allege any facts regarding any particular type of oral injury or condition that would aid this Court in its 12(b)(6) inquiry, but rather only "tooth pain," which eventually led to the loss of the tooth. . . . This claim against Defendant Schlenger is utterly bereft of factual allegations which would allow for the Court to deduce the plausibility of a cognizable cause of action" under *Iqbal*); *Denson v. Crish*, No. 3:10 CV 1440, 2010 WL 3808013, at * (N.D. Ohio Sept. 27, 2010) (plaintiff failed to allege serious medical need under *Iqbal* where he "state[d] he has 'mental health issues' but [gave] no indication as to what those issues may be and d[id] not describe his condition."); *Bass v. Neotti*, No. 09cv1850, 2010 WL 3339490, at *6 (S.D. Cal. Aug. 23, 2010) (internal quotation omitted) ("Although Plaintiff alleges that he suffered injury to his testicles in particular, he does not describe his physical condition in any detail or set forth any facts regarding other injuries sustained from the beating. As such, Plaintiff has not plead facts sufficient to show the

27

failure to treat his condition could result in further significant injury or the unnecessary and wanton infliction of pain."); *Haley v. CMS*, No. 1:09-CV-144, 2009 WL 4559229, at *2 n.1 (E.D. Mo. Nov. 30, 2009) (plaintiff's allegation "that defendants acted with deliberate indifference to his 'very serious and severe diabetic and other medical needs' insufficient to allege claim under *Iqbal*).

The closest plaintiffs come to alleging the specifics necessary to establish a serious medical need are their allegations that they were not provided a special diet for their diabetes, and that defendant Khan failed to approve knee surgery for plaintiff Herrerra. However, the allegations of the amended complaint also establish that these decisions were based on the conclusions of defendant Khan and other medical providers that neither a special diabetic diet nor surgery for plaintiff Herrerra's knee were necessary, *see* Amended Compl., ¶¶ 28, 107. Thus, at most these allegations show only that plaintiffs and defendants differed over the proper course of treatment. However, these sorts of conflicts between a prisoner and his medical providers fail to state an Eighth Amendment claim of deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 107; *Westlake v. Lucas,* 537 F.2d 857, 860-61 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). Thus, even if plaintiffs alleged sufficient facts to show that their diabetes and plaintiff Herrerra's knew condition constituted serious medical needs, the complaint fails to allege that defendants were deliberately indifferent to those needs. Accordingly, the Court should grant the medical defendants' motion to dismiss.

For the same reasons, the Court should dismiss *sua sponte* plaintiffs' claims against defendant Morris. Although defendant Morris has not filed a motion to dismiss, apparently because the amended complaint has not yet been served on him, as discussed in connection with plaintiff's claims

against defendant Hammond the Court may *sua sponte* dismiss the claims against defendant Morris both pursuant to 42 U.S.C. § 1997e(c)(1) and because the claims against defendant Morris suffer from the same deficiency–*i.e.*, failure to adequately allege a serious medical need–as the claims against defendants Khan and Mass.  *See supra*, note 4.

### 7.    *Retaliation–Defendant Khan*

The Medical defendants also contend that plaintiff Menefee has failed to sufficiently allege a retaliation claim against defendant Khan.  The Court should agree.

In order to succeed on a retaliation claim, plaintiffs must establish three elements:  "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two - that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (plurality op.).  The only allegation in the complaint arguably raising a retaliation claim is plaintiff Menefee's allegation that defendant Khan "threatened to have plaintiff Menefee transferred . . . ."  Amended Compl., ¶ 49.  This allegation, however, fails to allege the second and third elements of the *Thaddeus-X* test.

A transfer or threat to transfer constitutes an adverse action only where the transfer will result in foreseeable negative consequences, such as more restrictive living conditions or impeding access to courts.  *See Hill v. Lappin*, 630 F.3d 468, 474-75 (6th Cir. 2010); *Hix v. Tennessee Dep't of Corrections*, 196 Fed. Appx. 350, 358 (6th Cir. 2006); *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005).  Plaintiffs do not allege that defendant Khan threatened to transfer plaintiff to a specific institution such that the transfer would have had foreseeable negative consequences.  Further, plaintiffs do not allege how they could have plausibly believed that defendant Khan, a contract doctor,

had the power to carry out this threat such that the threat would have deterred plaintiff Menefee from

exercising his First Amendment rights.  *Cf. Neier v. City of Pemberville*, No. 99-3104, 2000 WL

32008, at *4 (6th Cir. Jan. 4, 2000) (a threat made by defendant "that plaintiff would lose his job

unless he dropped his [ ] claim" was not an adverse action where "[p]laintiff realized that [defendant]

was without authority to carry out such a threat and plaintiff does not allege that [defendant] made

an effort to have him terminated.").

Further, even assuming that plaintiffs' allegations regarding defendant Khan satisfy the first

two elements of the *Thaddeus-X* test, they have failed to sufficiently allege a causal connection

between the allegedly adverse actions taken against him and his engaging in protected conduct, *i.e.*,

filing of grievances.  Plaintiffs merely allege in conclusory fashion that defendant Khan threatened

to have plaintiff Menefee transferred; they do not allege in general or specifically that this alleged

threat was motivated by defendant Khan's desire to retaliate against plaintiff Menefee for engaging

in constitutionally protected activity.  Such "conclusory allegations of retaliatory motive unsupported

by material facts will not be sufficient to state a claim under § 1983."  *Harbin-Bey v. Rutter*, 420 F.3d

571, 580 (6th Cir. 2005) (internal quotation omitted); *see also*, *Cox v. Jackson*, 579 F. Supp. 2d 831,

848 (E.D. Mich. 2008) (Rosen J., adopting Report of Komives, M.J.).  Accordingly, the Court should

grant defendants' motion to dismiss with respect to plaintiffs' retaliation claim against defendant

Khan.

       8.     *ADA/Rehabilitation Act*


In their initial complaint, plaintiffs invoked both the Americans with Disabilities Act (ADA)

and § 504 of the Rehabilitation Act ("Section 504").  Plaintiffs do not mention these statutes in their

amended complaint.  However, in response to defendants' motions to dismiss, plaintiffs again invoke

these statutes (specifically in response to the Medical defendants' motion to dismiss on exhaustion grounds).  To the extent plaintiffs are asserting claims under the ADA and Section 504, the Court should conclude that the claims fail as a matter of law.

First, the individual defendants are not proper parties under the ADA or Section 504.  Title II of the ADA provides, in relevant part, that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  Similarly, Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."  29 U.S.C. § 794(a).  The ADA further provides, however, that "[t]he term 'public entity' means–(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority (as defined in section 24102(4) of Title 49)."  42 U.S.C. § 12131(1).  By its terms, the statute does not apply to individuals, and thus "public entity" under the Act does not include an individual prison official.  Accordingly, plaintiffs fail to state a claim against the individual defendants under the ADA.  *See Lee v. Michigan Parole Bd.*, 104 Fed. Appx. 490, 493 (6th Cir. 2004); *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (Roberts, J.); *Damron v. North Dakota Comm'r of Corrections*, 299 F. Supp. 2d 970, 976 (D.N.D. 2004), *aff'd*, 127 Fed. Appx. 909 (8th Cir. 2005).  Likewise, Section 504 imposes no liability on individuals.  *See Lee*, 104 Fed. Appx. at 493; *Hiler v. Brown*, 177 F.3d 542, 545-46 (6th Cir. 1999).

31

Accordingly, the individual defendants are entitled to dismissal with respect to plaintiffs' ADA and Section 504 claims.

Further, with respect to plaintiffs' ADA and Section 504 claims against both the MDOC and the individual defendants, the Court should conclude that those claims fail as a matter of law.[6]  To establish a Title II violation, plaintiffs must allege and show that (1) they have a disability; (2) they are otherwise qualified to receive the benefit or service at issue; and (3) they are being excluded from participation in, being denied the benefit of, or being subjected to discrimination in the provision of, the services, programs, or activities of the public entity because of their disability.  *See Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005).  Plaintiffs must allege and prove the same elements to establish a claim under Section 504.  *See S.S. v. Eastern Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008).  Here, plaintiffs have failed to allege any facts showing that they have a "disability" within the meaning of the ADA or Section 504.  Under the ADA, "disability" is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12012(2).  The term is similarly defined by Section 504.  *See* 29 U.S.C. § 705(9), (20).  Although plaintiffs allege that they suffer from several generalized medical conditions, nothing in the amended complaint would allow the Court to conclude that these conditions substantially limit one or more of their major life activities.

---

[6]Defendants suggest that the MDOC is entitled to Eleventh Amendment immunity with respect to plaintiff's ADA claims.  However, the ADA explicitly abrogates the states' Eleventh Amendment immunity, and whether this abrogation of immunity is valid with respect to the particular claims presents a complicated issue which is not fully briefed by the parties.  *See United States v. Georgia*, 546 U.S. 151, 159 (2006) (establishing case-specific, three part test for determining whether Eleventh Amendment bars a plaintiff's ADA claims against a state entity).  Because plaintiff's allegations fail to state a claim for relief in any event, I do not consider the Eleventh Amendment issue here.

Further, plaintiffs have failed to allege that they are being excluded from participation in or being denied the benefit of any prison programs, services, or activities because of their disabilities. Plaintiffs do not allege any discrimination on the basis of their alleged disabilities. Rather, plaintiffs claim that they are being denied proper medical care for their medical conditions. Such challenges to the extent or quality of the medical care they received do not state a claim under the ADA or Section 504. *See Breedlove v. Costner*, 405 Fed. Appx. 338, 341 (10th Cir. 2010); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *Elbert v. New York Dep't of Correctional Servs.*, 751 F. Supp. 2d 590, 596 (S.D.N.Y. 2010); *Althouse v. Roe*, 542 F. Supp. 2d 543, 547 (E.D. Tex. 2008); *Carrion v. Wilkinson*, 309 F. Supp. 2d 1007, 1016 (N.D. Ohio 2004). Accordingly, the Court should conclude that defendants are entitled to dismissal of plaintiffs' ADA and Section 504 claims.

9.    *Defendant Fundunburks*

Finally, the Court should *sua sponte* dismiss plaintiff's claim against defendant Fundunburks pursuant to 42 U.S.C. § 1997e(c)(1) for failure to state a claim.[7] Plaintiff Menefee alleges that while standing in line waiting to see O'Dell, defendant Fundunburks walked in and demanded that plaintiff go to the back of the line. About five minutes later, O'Dell motioned for plaintiff to come into his office, but Fundunburks stopped him from doing so. At this point, Fundunburks pushed plaintiff in the chest away from the counselor's office. *See* Amended Compl., ¶¶ 74-77. Although plaintiff alleges that this action put him "in fear of his life" and caused him to "suffer physical pain [and] mental and emotional distress," *id.*, ¶ 77, he does not allege that Fundunburks touched him in any other way or allege that the shove resulted in any physical injury. The Court should conclude that these allegations fail to state an Eighth Amendment claim against defendant Fundunburks.

---

[7]As with defendants Hammond and Morris, it does not appear that defendant Fundunburks has been served with the amended complaint.

As the Supreme Court has explained, not "every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (citations omitted). As the Supreme Court explained, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Id.* at 9 (internal quotation omitted). Thus, "[f]ederal courts have routinely held that a single push, shove, punch, or blow by a prison guard does not rise to the level of a constitutional violation. The same holds true even when the push or shove appears to be unnecessary." *Stanley v. Smith*, No. 2:07-CV-139, 2008 WL 4534434, at *6 (W.D. Mich. Sept. 29, 2008) (citations omitted) (citing *Hampton v. Alexander*, No. 95-3457, 1996 WL 40237 (6th Cir. Jan. 31, 1996); *Neal v. Miller*, 778 F. Supp. 378, 383-384 (W.D. Mich. 1991) (collecting cases)). Plaintiff Menefee's claim that defendant Fundunburks pushed him in the chest one time is the type of *de minimis* use of force which *Hudson* makes clear does not rise to the level of a constitutional violation. *See DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000); *Show v. Patterson*, 955 F. Supp. 182, 193 (S.D.N.Y. 1997); *Lyell v. Schachle*, No. 1:95-0035, 1995 WL 870803, at *6 (Apr. 3, 1995), *magistrate judge's report adopted*, 1996 WL 391557 (M.D. Tenn. Feb. 28, 1996). Accordingly, the Court should dismiss plaintiffs' claim against defendant Fundunburks.

E.     *Plaintiff Menefee's Motion for Summary Judgment*

Also pending before the Court is plaintiff Menefee's motion for summary judgment. In this motion, plaintiff Menefee seeks summary judgment on his property deprivation claim against defendant Lesley. As explained above, however, plaintiffs' amended complaint fails to state a claim in this regard because plaintiff has failed to allege the absence of adequate post-deprivation remedies.

34

Nothing in plaintiff Menefee's motion for summary alters this conclusion. Accordingly, the Court

should deny plaintiff Menefee's motion for summary judgment.

F.    *Conclusion*

In view of the foregoing, the Court should deny plaintiffs' motions for preliminary injunction,

class certification, and summary judgment, and should grant defendants' motions to dismiss. The

Court should accordingly dismiss plaintiffs' claims against all defendants. More specifically, the

Court should dismiss plaintiffs' claims:

- against the MDOC on the basis of Eleventh Amendment immunity;
- against defendants Caruso, Armstrong, Stieve, Pramstallar, McMillan, Hammond, and Lange on the basis that the amended complaint fails to allege their personal involvement;
- against defendant Lesley on the basis that the amended complaint fails to state a claim for deprivation of property because plaintiffs' have failed to allege an absence of post-deprivation remedies;
- against defendant Fundunburks on the basis that plaintiffs' amended complaint fails to state an Eighth Amendment claim because it alleges only a *de minimis* use of force;
- against defendant Piper on the basis that the claims are barred by the statute of limitations;
- against defendants Khan, Mass, and Morris on the basis that the amended complaint fails to allege sufficient facts to state a claim that these defendants were deliberately indifferent to plaintiffs' serious medical needs; and
- under the ADA and Section 504 on the bases that the individual defendants are not liable under these statutes, plaintiffs have failed to allege that they suffer from a disability under the statutes, and have failed to allege that they were denied participation in any services or programs on the basis of their alleged disabilities.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation,

but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED.

R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal.

*Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505

(6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which

raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 7/22/11


The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and  by electronic means or U.S. Mail on July 22,  2011.

s/Eddrey Butts
Case Manager